UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY WALKER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>AMERICAN NATIONAL INSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No.16-cv-06255-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 54 |

Pending before the Court is a motion for summary judgment by Defendant American National Insurance Company. Dkt. No. 57. For the reasons set forth below, the Court **GRANTS** the motion.

## I. BACKGROUND

### A. Facts[1]

This case centers on five insurance policies purchased by Plaintiffs Anthony and Pamela Walker ("Mr. Walker" and "Mrs. Walker," respectively). *See* Dkt. No. 1-1, Ex. A ("Complaint") ¶¶ 11-16.

#### 1. Insurance Policies Issued to Mrs. Walker

On October 16, 1986, Defendant issued Policy M010900740 ("Policy 740") to Mrs. Walker, who was the owner and the insured. Dkt. No. 54-2 (Declaration of Wayne Smith, or "Smith Decl.") ¶ 3; *see also id.*, Ex. 1 (Policy 740). On November 4, 2010, Defendant received a cash loan request on Policy 740. *Id.* ¶ 4; *see also id.*, Ex. 2. A cash loan "is taking out the cash value of the policy," which the policyholder must "eventually . . . pay back." Dkt. No. 54-1

---

[1] All facts listed in this section are either undisputed or reflect this Court's drawing all reasonable inferences in Plaintiffs' favor.

(Declaration of Sean P. Nalty, or "Nalty Decl."), Ex. 18 (Deposition of Rajeshvar Singh, or "Singh Depo."), at 34:22-35:2. Defendant accordingly issued a check to Mrs. Walker in the amount of $1,600, which was subsequently cashed. Smith Decl. ¶ 4; *see also id.*, Ex. 3. Although Plaintiffs "failed to make the monthly payment on this loan," which led to the lapse of Policy 740, Defendant "forgave the loan" and reinstated the policy, which remains in force. *Id.* ¶ 4.

On October 18, 2001, Defendant issued Policy M014157288 ("Policy 288") to Mrs. Walker, who was the owner and the insured. *Id.* ¶ 5; *see also id.*, Ex. 4. (Policy 288). On November 4, 2010, Defendant received a cash loan request on Policy 288, and accordingly issued a check to Mrs. Walker in the amount of $1,700, which was subsequently cashed. *Id.*; *see also id.*, Ex. 5, 6. Although Plaintiffs "have not refunded to [Defendant] the proceeds from the loan," Defendant forgave the loan. *Id.* ¶ 5. The policy remains in force. *Id.*

### 2. Insurance Policies Issued to Mr. Walker

On April 23, 2008, Defendant issued Policy M16038970 ("Policy 970") to Mr. Walker. *Id.* ¶ 6; *id.*, Ex. 7 (Policy 970). Mr. Walker was the owner and his granddaughter, J.W., was the insured. *Id.* ¶ 6. On January 14, 2011, Defendant received a cash surrender request on Policy 970. *Id.*; *see also id.*, Ex. 8. A policyholder who surrenders her policy "closes the policy," and receives its accumulated cash value. *See* Singh Depo. at 34:22-35:7. After the submission of the cash surrender request, "[n]o premium was paid" on this policy, and Mr. Walker "received no cash on surrender as no cash was owed under the terms of" Policy 970. Smith Decl. ¶ 6.

On December 2, 2010, Defendant issued Policy M16216437 ("Policy 437") to Mr. Walker. *Id.* ¶ 7; *see also id.*, Ex. 9 (Policy 437). Mr. Walker was the owner and his granddaughter, V.W., was the insured. *Id.* ¶ 7. Policy 437 replaced Policy 970, leaving "no material gap in coverage." *Id.* Mr. Walker, moreover, "paid no additional premium for the replacement coverage." *Id.* This policy remains in force. *Id.*

On May 26, 2009, Defendant issued Policy M16114023 ("Policy 023") to Mr. Walker. *Id.* ¶ 8; *see also id.*, Ex. 10 (Policy 023). Mr. Walker was the owner and his granddaughter, J.W., was the insured. *Id.* ¶ 8. On January 14, 2011, Defendant received a cash surrender request. *Id.*; *see also id.*, Ex. 11. After the submission of the cash surrender request, "[n]o premium was paid" on

this policy, and Mr. Walker "received no cash on surrender as no cash was owed under the terms of" Policy 023. *Id.*

### 3. Mr. Walker's Contention that Defendant "Stole" Plaintiffs' Policies

Mr. Walker contends that Defendant "stole" six policies from him by falsely asserting that he "never paid for them." Nalty Decl., Ex. 12 (Deposition of Anthony Walker, or "Anthony Walker Depo."), at 42:4-43:3. Among these six policies, Mr. Walker claims, are four of the policies at issue in this case. *See id.* at 45:1-9 (Mr. Walker's claim that Defendant "stole" Policies 288 and 740); *id.* at 46:16-21 (Policy 970); *id.* at 72:8-13 (Policy 023). There do not appear to be any allegations by Mr. Walker that Defendant "stole" the fifth policy involved in this case, Policy 437.

Mr. Walker stated that "[t]he only thing [he] did was, [he] wanted to surrender four policies for [his] children," none of which are at issue in this case. *Id.* at 43:12-14; *see also* Dkt. No. 56-2 (Declaration of Anthony Walker, or "Walker Decl.") ¶ 3 ("In or around 2008, my wife (Plaintiff Pamela Walker) and I decided to surrender the whole life insurance policies of our adult children[.]"). After doing so, however, he "began receiving letters from [Defendant] of loans that were due under the policies of my adult children," despite the fact that he "never requested loans." Walker Decl. ¶ 4. During a visit to Defendant's office to notify the company of its error, Mr. Walker noticed that an agent "had signed [his] initials on a surrender form without [his] consent." *Id.* ¶ 5. Rajveshar Singh, a manager for Defendant, assisted Mr. Walker in correcting the error and asked him to "sign surrender forms that were blank," telling Mr. Walker "that he would fill in the forms later." *Id.* Mr. Walker did so, and subsequently "realized that [Defendant] cashed out as loans the 2 policies of [his] wife, the policies of [his] grandchildren [V.W.] and [J.W.]," as well as another loan not as issue in this case. *Id.* ¶ 7. Mr. Walker had "never requested that [his] wife's policies be surrendered or touched in any way," nor did he ever request that his granddaughters' loans "be surrendered." *Id.* ¶¶ 6-7. Mr. Walker contacted Defendant in December 2010 "to inform them of the situation and requested that the mistake be fixed," *id.* ¶ 8, and "continued to contact [Defendant] and Mr. Singh for over 5 years and was always told the problem was being investigated," *id.* ¶ 9. Mr. Walker testified that he was unsure how the policies of his wife and

3

granddaughters became "involved," and suggested that Defendant's errors were due to "some fraud." *See* Anthony Walker Depo. at 43:15-17.

Mr. Walker stated that he first learned "[a]ll this"—that is, he first believed Defendant had "stolen" his policies—10 years prior to his February 9, 2018 deposition, in February 2008. *See id.* at 48:8-15; *see also id.* at 48:14-15 ("When the company first made a mistake ten years ago, it all went haywire."). More specifically, Mr. Walker testified that he learned that Policy 740, Policy 288, Policy 970, and Policy 023 were stolen 10 years prior to his deposition. *See id.* at 47:13-20 (Policy 970); *id.* at 49:4-11 (Policy 970 and "[t]he two policies that [his] wife has")._; id._ at 72:8-15 (Policy 023).

As for Mrs. Walker, she testified that she learned "over eight years ago" from Singh that the two policies she owned, Policy 740 and Policy 288, were no longer in force. Nalty Decl., Ex. 17 (Deposition of Pamela Walker, or "Pamela Walker Depo."), at 20:14-21:5; *see also id.* at 22:1-9; *id.* at 30:19-22 ("Q: And from that point forward, it's been your understanding that you don't have any type of life insurance with [Defendant]? A: Yes."). She testified that she felt that Defendant "has put me and my family through a lot of hardship," the hardship being "not having any life insurance policies." *Id.* at 34:11-17. Mrs. Walker was also diagnosed with breast cancer in 2010, and Mr. Walker stated that the thought of not having life insurance for her has caused both me and [Mrs. Walker] considerable stress." *See* Walker Decl. ¶ 13.

**B.    Procedural Posture**

On August 17, 2016, Plaintiffs filed suit in state court. *See* Dkt. No. 1-1, Ex. A. Defendant filed a notice of removal in this Court on October 28, 2016. Dkt. No. 1. On August 22, 2017, the Court denied a motion to remand by Plaintiffs and dismissed with prejudice the claims against Singh, who Plaintiffs named in the Complaint. *See* Dkt. No. 47.

On March 21, 2018, Defendant filed a motion for summary judgment or, in the alternative, partial summary judgment and summary adjudication of issues. Dkt. No. 54 ("Mot."). Plaintiffs filed their opposition on April 7, 2018, Dkt. No. 56 ("Opp."), and Defendant replied on April 13,

4

2018, Dkt. No. 57 ("Reply").[2]

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving

---

[2] The Court notes that Plaintiffs' opposition was filed three days late, apparently due to a calendaring error by counsel for Plaintiffs. *See* Dkt. No. 56-1 (Declaration of John A. Holman) ¶ 2. Given the lack of prejudice to Defendant, the Court declines to strike the opposition. *See* Reply at 1.

5

party has no such evidence." *Nissan Fire*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102-03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

## III. DISCUSSION

Defendant seeks summary judgment as to each of Plaintiffs' seven causes of actions. The Court considers each one in turn.

### A. Plaintiffs' Claim for Breach of Implied-in-Fact Contract Is Precluded As a Matter of Law.

Plaintiffs' first cause of action is for breach of written contract. *See* Compl. ¶ 43 ("Plaintiff paid the premiums and or was ready willing able to pay the premiums. Defendant failed to provide the insurance benefits for which plaintiff paid American National Insurance Company."). Plaintiffs' second cause of action is for breach of implied-in-fact contract based on the same conduct. *See id.* ¶¶ 51-52 ("Plaintiff . . . paid premiums in consideration of receiving insurance policies from American National Insurance Company alleged herein. Defendants, in consideration of premiums paid to American National Insurance Company, promised and agreed to provide plaintiff with the insurance policies referred to herein."). "[I]t is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Daniel v. Wayans*, 8 Cal. App. 5th 367, 398 (2017) (citations omitted) (original brackets).[3] Plaintiffs' opposition disputes

---

[3] Defendant argues that "[t]here is no evidence that there was an implied in fact contract" between

6

1 Defendant's contention that summary judgment should be granted as to this claim, but their
2 argument is conclusory and lacks any relevant legal authority.
3 Accordingly, the Court grants summary judgment as to Plaintiffs' claim for breach of
4 implied-in-fact contract.

### B. Plaintiffs Proffer No Evidence in Support of Their Claim That Defendant Breached the Covenant of Good Faith and Fair Dealing.

Plaintiffs' third cause of action is for breach of the covenant of good faith and fair dealing (also referred to as "bad faith"). *See* Compl. ¶¶ 55-60. "Bad faith occurs where the insurer withholds insurance benefits unreasonably and without proper cause." *Tetravue Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 14-CV-2021 W (BLM), 2018 WL 1172852, at *5 (S.D. Cal. Mar. 6, 2018) (citing *Rappaport-Scott v. Interinsurance Exch. of the Auto. Club*, 146 Cal. App. 4th 831, 837 (2007)). But where "there is no *potential* for coverage, and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995) (original emphasis). It is only "when benefits are due an insured" that "delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because they frustrate the insured's right to receive the benefits of the contract in prompt compensation for losses." *See id.* (citations and internal quotation marks omitted).

Defendant has provided undisputed evidence that Policy 970 and Policy 023 were surrendered, and are thus no longer in force. *See* Singh Depo. at 34:22-35:7; Smith Decl., Exs. 8, 11. There is thus no potential for coverage under these policies as a matter of law, precluding any bad faith claim. *See Waller*, 1 Cal. 4th at 36. Defendant has also produced evidence that Policy 740, Policy 288, and Policy 437 are still in force, with no benefits due. *See* Smith Decl. ¶¶ 4, 5, 7. In opposition, Plaintiffs do not dispute that evidence, but instead respond with contentions that

---

Defendant and Plaintiffs, *see* Mot. at 17, but even that argument overlooks the threshold issue: an implied-in-fact contract cannot exist where there is an express contract covering the same subject matter, *see Daniel*, 8 Cal. App. 5th at 398.

7

their bad faith claim is based on the assertion that Defendant "falsified surrender forms, surrendered whole life insurance policies without [Plaintiffs'] consent or knowledge, failed to investigate claims in accordance with their own procedures, used deceptive practices and deliberate misrepresentations to avoid paying claims, and failed to maintain adequate investigative procedures." *See* Opp. at 10. But they provide neither citations to the record in support of these claims nor any supporting evidence.

Accordingly, the Court grants summary judgment as to Plaintiffs' bad faith claim, given their failure to meet their evidentiary burden.

### C. Plaintiffs' Boilerplate Negligence Allegations Are Insufficient to Warrant a Departure from the General Rule Precluding Negligence Claims Against Insurers.

Plaintiffs' fourth cause of action for negligence is based on the allegation that "Defendant . . . was negligent in doing the acts alleged" in the Complaint, despite its "ow[ing] plaintiff a duty of ordinary care." *See* Compl. ¶¶ 62-63. In opposition, Plaintiffs state their claim for negligence is based on, again, Defendant's "falsifying surrender forms, surrendering whole life insurance policies without [Plaintiffs'] consent or knowledge, failing to investigate claims in accordance with their own procedures, using deceptive practices and deliberate misrepresentations to avoid paying claims, and failing to maintain adequate investigative procedures," all of which "exceeds the scope of the contract between the parties." *See* Opp. at 11. Plaintiffs cite no legal authority in the single paragraph they devote to arguing this cause of action.

In California, "negligence is not among the theories of recovery generally available against insurers." *Tento Int'l, Inc. v. State Farm Fire & Cas. Co.*, 222 F.3d 660, 664 (9th Cir. 2000) (citing *Sanchez v. Lindsey Morden Claims Servs., Inc.*, 72 Cal. App. 4th 249, 254 (1999)) (internal quotation marks omitted). "When an insured seeks to recover in tort for an insurer's mishandling of a claim, it must allege *more* than mere negligence." *Opperwall v. State Farm Fire & Cas. Co.*, No. 17-cv-07083-YGR, 2018 WL 1243085, at *4 (N.D. Cal. Mar. 8, 2018) (citing *Adelman v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 352, 369 (2001)) (internal quotation marks omitted) (original emphasis). Plaintiffs' negligence allegations here are boilerplate. Moreover, they fail to "provide[] any support for why [they] should be allowed to pursue a negligence claim in this case

8

despite the general rule that negligence actions are not permitted against insurers." *See id.*

Accordingly, the Court grants summary judgment as to Plaintiffs' negligence claim.

### D. Plaintiffs' Claim Under Section 790.03(h) of the California Insurance Code Fails Because There Is No Private Right of Action Under That Section.

Plaintiffs' fifth cause of action, which they purport to bring under Cal. Ins. Code § 790.03(h), is barred at the outset. Under California law, "[t]here is no private civil cause of action against an insurer that commits one of the various acts listed in" section 790.03(h). *See Reid v. Mercury Ins. Co.*, 220 Cal. App. 4th 262, 276 (2013) (quoting *Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287, 313 (1988)) (internal quotation marks omitted). Moreover, Plaintiffs do not address this claim in their opposition.

Accordingly, the Court grants summary judgment as to Plaintiffs' claim under section 790.03(h) of the California Insurance Code.

### E. Plaintiffs Provide No Evidence of the Alleged Conduct Underlying Their Unfair Competition Claim.

Plaintiffs also allege a violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), premised on the allegation that "Defendant sold plaintiff insurance policies and then den[ied] the existence of the insurance policies and or misrepresented material terms, facts and circumstances relating to the insurance policies." *See* Compl. ¶ 72. Plaintiffs also cite Defendant's alleged refusal to reinstate their policies, confirm the existence of policies, provide copies of policies, remove unauthorized loans, and provide information regarding the status of the policies. *Id.* ¶ 73. They seek injunctive relief. *See id.* ¶ 75.

Defendant contends that Plaintiffs are not entitled to injunctive relief since "the subject of the Complaint is past conduct." *See* Mot. at 23. It is true that a claim under the UCL arguably "lacks merit" where the conduct complained of has ended. *See Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1022 (2005) ("As the California Supreme Court said long ago, 'when as here, the assertedly wrongful practice has ended long before the action is filed, its requested termination is a rather empty prayer.'") (quoting *Blue Chip Stamps v. Superior Court*, 18 Cal. 3d 381, 386 (1976)). Defendant argues that because "the injury that Walker complains of

9

is that the policies were stolen 10 years ago," and because "Ms. Walker testified that she lost her policies eight years ago . . . there is absolutely no evidence to support the existence of a real or immediate threat of repeated injury in the future." Mot. at 23-24.

In opposition, Plaintiffs purport to cite legal authority (but do not provide an actual citation) to support their assertion that "UCL claims may be based on claims handling practices, as long as they do not rest exclusively on [Unfair Insurance Practices Act] violations." *See* Opp. at 11. Plaintiffs go on to argue that "[t]he conduct of [Defendant] as set forth above establishes this private right of action," *see id.*, in an apparent reference their contention that Defendant "falsified surrender forms, surrendered whole life insurance policies without [Plaintiffs'] consent or knowledge, failed to investigate claims in accordance with their own procedures, used deceptive practices and deliberate misrepresentations to avoid paying claims or reinstating claims, and failed to maintain adequate investigative procedures," *id.* at 10.

Again, Plaintiffs provide neither citations to the record nor any evidence of the conduct underlying their UCL claim. Accordingly, the Court grants summary judgment as to this claim, given Plaintiffs' failure to meet their evidentiary burden.

### F. Plaintiffs' Remaining Causes of Action Are Time-Barred.

Defendant contends that Plaintiffs' remaining causes of action for breach of contract and declaratory relief are time-barred. The Court agrees.

#### 1. In California, the statute of limitations for a cause of action begins to run when the claim "is complete with all of its elements."

"The application of the statute of limitations on undisputed facts is a purely legal question[.]" *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112 (1988)). The limitations period begins when a claim "accrues," or "when it is complete with all of its elements—those elements being wrongdoing, harm, and causation." *Id.* (citation, internal quotation marks, and brackets omitted).

For a breach of contract claim, the elements "are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citation

omitted).  Such a cause of action generally accrues "at the time of breach."  *Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014) (citation and internal quotation marks omitted).  But because a claim accrues "when it is complete with *all* of its elements," *see Aryeh*, 55 Cal. 4th at 1191 (emphasis added), it is more accurate to state that "a breach of contract claim does not lie and hence does not accrue until the plaintiff must show an actionable and appreciable harm beyond mere nominal damages," *Buschman*, 42 F. Supp. 3d at 1251 (citing *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000)) (internal quotation marks omitted).

An action for breach of contract is governed by a four-year statute of limitations.  *See* Cal. Civ. Proc. Code § 337(1).  The limitations period for declaratory relief "concern[ing] obligations or liabilities 'founded upon an instrument in writing'" is four years.  *See Ginsburg v. Gamson*, 205 Cal. App. 4th 873, 883 (2012) (citing Cal. Civ. Proc. Code § 337(1)).

### 2. Plaintiffs' breach of contract and declaratory relief claims accrued in 2010 at the latest, rendering their claims in this suit untimely.

Mr. Walker's claims for relief, which are based on the policies he owns (Policy 970, Policy 437, and Policy 023), accrued once he could show damages.  *See Buschman*, 42 F. Supp. 3d at 1251.  Plaintiffs allege that due to Defendant's breach of contract, they suffered "loss of insurance benefits, peace of mind, emotional distress, serious emotional distress, worry, anxiety, inconvenience, [and] money paid for insurance premiums for which they did not receive insurance coverage and or insurance benefits[.]"  Compl. ¶ 48.

Viewed in the light most favorable to Plaintiffs, the evidence proffered by Defendant establishes that 10 years before his deposition, in February 2008, Mr. Walker began believing that Defendant had stolen his policies, because that was when "it all went haywire."  *See* Anthony Walker Depo. at 48:14-15.  In 2008, when he attempted to surrender the policies of his adult children (which are not at issue in this case), Mr. Walker "realized that [Defendant] cashed out as loans the 2 policies of [his] wife" and "the policies of [his] grandchildren [V.W.] and [J.W.]," Walker Decl. ¶ 7, despite the fact that had "never requested that [his] wife's policies be surrendered or touched in any way," and never requested that his granddaughters' loans "be

11

surrendered," *id.* ¶¶ 6-7. In December 2010, Mr. Walker contacted Defendant "to inform them of the situation and requested that the mistake be fixed." *Id.* ¶ 8.

The undisputed record therefore establishes that Mr. Walker became aware of his damages for breach of contract by, at the latest, December 2010. At that point, it is clear that he essentially realized that he was not receiving what he was paying for. He was therefore required to bring his claim no later than December 2014. *See* Cal. Civ. Proc. Code § 337(1). Plaintiffs, however, filed this action in state court on August 17, 2016. *See* Dkt. No. 1-1. His claim is accordingly time-barred. His claim for declaratory relief as to his "right, title and interest in the insurance policies" at issue in this case, *see* Compl. ¶ 81, is time-barred for the same reason, *see Ginsburg*, 205 Cal. App. 4th at 883.

Mrs. Walker's claims for relief are based on the policies she owns: Policy 740 and Policy 288. Again, viewed in the light most favorable to Plaintiffs, the evidence proffered by Defendant establishes that she became aware that her policies were no longer in force in February 2010, more than eight years before her deposition. *See* Pamela Walker Depo. at 20:14-21:5; *see also id.* at 22:1-9; *id.* at 30:19-22; Walker Decl. ¶ 13. Because she testified that not having life insurance policies was "a hardship," *see id.* at 34:11-17, the evidence establishes that damages accrued at the latest in February 2010, based on the lack of life insurance policies.

Plaintiffs proffer no evidence in rebuttal. The undisputed record, therefore, establishes that Mrs. Walker became aware of her damages for breach of contract by, at the latest, February 2010. As a result, she was required to bring her claim no later than February 2014. *See* Cal. Civ. Proc. Code § 337(1). Plaintiffs filed this action in state court on August 16, 2016. *See* Dkt. No. 1-1. Her claims for breach of contract and declaratory relief based on that contract are therefore time-barred.

### 3. Plaintiffs provide no evidence showing that their discovery of the claim was delayed or that they are entitled to an equitable exception.

Plaintiffs assert several arguments against Defendant's statute of limitations defense. None are persuasive. Their primary argument invokes the discovery rule, *see* Opp. at 6, which is the "most important" exception to the rules governing accrual of claims, *see Norgart v. Upjohn*

12

*Co.*, 21 Cal. 4th 383, 397 (1999). The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id.* A "plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least suspects . . . that someone has done something wrong to him[.]" *Id.* (citing *Jolly*, 44 Cal. 3d at 1110) (internal quotation marks omitted) (original ellipses). A plaintiff "has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements," and a plaintiff has a reason to suspect "when he has notice or information of circumstances to put a reasonable person on inquiry." *Id.* at 398 (citations and internal quotation marks omitted). "[H]e need not know the specific facts necessary to establish the cause of action," and indeed, "he cannot wait for them to find him and sit on his rights; he must go find them himself if he can and file suit if he does." *Id.* (citation and internal quotation marks omitted).[4]

For the reasons discussed above, the Court is satisfied that Plaintiffs had inquiry notice of their breach of contract claims (and declaratory relief claims) in 2010, which required them to file suit within four years. Plaintiffs contend that they "did not have the requisite knowledge of the injury suffered nor the essential facts to support their claims until consulting with an attorney." *See* Opp. at 6. But it is black-letter law that a plaintiff "need not know the specific facts necessary" for his or her cause of action, *Norgart*, 21 Cal. 4th at 398, and need only "have reason to at least *suspect* that a type of wrongdoing has injured them," *see Fox*, 35 Cal. 4th at 807 (emphasis added). Plaintiffs, by their own admission, suspected such wrongdoing in 2010. Moreover, Plaintiffs' suggestion that their cause of action did not accrue until 2016, when they consulted an attorney, contravenes the law on this point. *See Gutierrez v. Mofid*, 39 Cal. 3d 892, 898 (1985) (in bank) ("It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal

---

[4] The Supreme Court clarified *Norgart* in *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005). There, it held that "[u]nder the discovery rule, suspicion of *one or more* of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." *Fox*, 35 Cal. 4th at 807 (citation omitted) (emphasis added). "Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." *Id.*

13

theories underlying his cause of action. Thus, if one has suffered appreciable harm and knows or suspects that professional blundering is its cause, the fact that an attorney has not yet advised him does not postpone commencement of the limitations period.").

Plaintiffs also incorrectly suggest that equitable tolling and equitable estoppel apply in these circumstances. *See* Opp. at 6. "Where . . . a plaintiff contends that the statute of limitations is not a bar based on equitable tolling, the plaintiff bears the burden of proving the applicability of such." *Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125, 1137 (N.D. Cal. 2009) (citing *Judelson v. Am. Metal Bearing Co.*, 89 Cal. App. 2d 256, 266 (1948)). The same is true of a plaintiff asserting equitable estoppel. *See Utterkar v. Ebix, Inc.*, No. 14-CV-02250-LHK, 2015 WL 1254768, at \*4 (N.D. Cal. Mar. 18, 2015) (stating that "under California law, a plaintiff carries the burden of pleading and proving the . . . elements of equitable estoppel") (citing *Honig v. S.F. Planning Dep't*, 127 Cal. App. 4th 520, 529 (2005)). Here, Plaintiffs have done nothing that approaches meeting those burdens. Their brief cites the standards for equitable tolling and equitable estoppel, but proffers no evidence showing their entitlement to such relief. This is insufficient on summary judgment, particularly where it requires the Court to "scour the record" in order to piece together facts that could support a litigant's vague, undeveloped argument. *See Keenan*, 91 F.3d at 1279.

Last, Plaintiffs refer the Court to allegations in the Complaint setting out Defendants' alleged violations, *see* Opp. at 6-7 (citing Compl. ¶ 45), which are plainly insufficient at the summary judgment stage. They also set forth a paragraph's worth of facts asserting, *inter alia*, that they (1) notified Defendant regarding their concerns with the policies at issue in 2010; (2) that in 2013, "Plaintiffs still had concerns related to the policies and [Defendant] was continuing its investigation of the concerns," and (3) received a letter dated February 4, 2016 from Defendant "refusing to reinstate the policy of Pamela Walker and returning a check made out to [Defendant]." *See* Opp. at 7 (citing record). But as discussed above, Plaintiffs' contention that they notified Defendant of their concerns regarding the policies in 2010 amounts to an admission that their claims accrued in 2010, requiring that they file suit within four years. They failed to do so.

Accordingly, the Court grants summary judgment as to Plaintiffs' breach of contract claims and their cause of action for declaratory relief. Moreover, because the Court grants summary judgment as to the entirety of Plaintiffs' Complaint, it need not reach the issue of punitive damages.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment. The Clerk is directed to enter judgment in favor of Defendant and close the case.

**IT IS SO ORDERED.**

Dated: 4/27/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge